UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**PAMELA SMART (#93G0356), BEDFORD HILLS CORRECTIONAL FACILITY, BEDFORD HILLS, NEW YORK,**

                                        Plaintiff(s),

                    v.

**M. GIFFORD, Corrections Officer, Bedford Hills Correctional Facility, JOSEPH JOSEPH, Deputy Superintendent of Programs, Bedford Hills Correctional Facility, DONALD SELSKY, Director of Disciplinary and Special Housing, Department of Corrections and Community Supervision, J. VALLO, Lieutenant, Bedford Hills Correctional Facility, SABINA KAPLAN, Superintendent, Bedford Hills Correctional Facility, T. FITZGERALD, Deputy Superintendent of Security, Bedford Hills Correctional Facility, JOHN and JANE DOEs 1- 100, JOHN and JANE DOE ENTITIES 1-10, all individuals, employees, agents, servants and entities of New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility, all whose true names and identities are unknown,**

                                        Defendant(s).

---

15 Civ. _____

# COMPLAINT

under the Civil Rights Act, 42 U.S.C. §1983

**JURY TRIAL: [x] YES [] NO**

**ECF CASE**

## PRELIMINARY STATEMENT

1.      Plaintiff Pamela Smart is a New York State inmate, currently incarcerated as a sentenced prisoner in Bedford Hills Correctional Facility, New York. She has been incarcerated at Bedford Hills Correctional Facility for twenty-one (21) years.

2.      On November 12, 2012, Plaintiff's prison cell at Bedford Hills Correctional Facility was searched. That search produced a plastic utensil in the form of a non-serrated cake instrument, which was confiscated from Plaintiff's cell.

3.      On November 16, 2012, a misbehavior report was written charging Plaintiff with Possession of a Weapon and Contraband. Administrative procedures and hearings, in which Plaintiff vehemently and intensely presented her defense, resulted in Plaintiff being found not guilty of possession a weapon, but guilty of possession of contraband.

4.      Plaintiff actively engaged the prison administrative process but could not have a just and proper result reached in her case. As such, Plaintiff brings the instant proceeding.

## JURISDICTION

5.      Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

6.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and pursuant to 28 U.S.C. §1343(a)(3) and (a)(4).

## VENUE

7.      Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

8.      Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. §1391(a)(2) and (b)(2 ) because the events giving rise to the claims occurred within this district.

## PARTIES

9.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

10.    As previously mentioned, Plaintiff Pamela Smart is a New York State inmate, currently incarcerated as a sentenced prisoner in Bedford Hills Correctional Facility, New York. She has been incarcerated at Bedford Hills Correctional Facility for twenty-one (21) years.

11.    Corrections Officer M. Gifford was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Officer Gifford is being sued in official and individual capacities.

12.    Deputy Superintendent of Programs Joseph Joseph was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Deputy Superintendent Joseph is being sued in official and individual capacities.

13.    Director of Disciplinary and Special Housing Donald Selsky was employed by the Department of Corrections and Community Supervision during the events that are the subject of this lawsuit. Director Selsky is being sued in official and individual capacities.

14.    Lieutenant J. Vallo was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Lieutenant Vallo is being sued in official and individual capacities.

15.    Superintendent Sabina Kaplan was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Superintendent Kaplan is being sued in official and individual capacities.

16.    Deputy Superintendent of Security T. Fitzgerald was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Deputy Superintendent Fitzgerald is being sued in official and individual capacities.

17.    John and Jane Doe 1-100 and John and Jane Doe Entities 1-10 are all individuals, employees, agents, servants and entities of New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility. Said Defendants were employed by New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility, during the events that are the subject of this lawsuit. Said Defendants are being sued in official and individual capacities.

18.    At all relevant times, all Defendants acted under color of state law and within the scope of their employment.

## EXHAUSTION

19.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

20.    Plaintiff has exhausted such administrative remedies as were available to her. Plaintiff's grievance forms and official Replies are attached hereto as Exhibit "A."

## PREVIOUS LAWSUITS

21.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

22.    Plaintiff has previously litigated this matter in New York State court, as demonstrated in number 23(3) below.

23.    Upon information and belief, the following is a list of lawsuits involving Plaintiff in connection with Plaintiff's imprisonment:

(1) Smart v. Fischer; Supreme Court; Albany County; Index Number: 2662/2014; Judge Christopher McCarthy; Approximate Date of Filing: 6/6/2014; Case is not pending and was disposed approximately on 1/21/2015; Judgment in favor of Respondents;

(2) Smart v. Prack; Supreme Court; Albany County; Index Number: 650/2013; Judge Gerald Connolly; Approximate Date of Filing: 3/12/2013; Case is not pending and was disposed approximately on 7/22/2013;

(3) Smart v. Fischer; Supreme Court; Albany County; Index Number: 2343/2013; Judge Stephan Schick; Approximate Date of Filing: 4/26/2013; Case is not pending and was disposed approximately on 8/12/2013; Judgment in favor of Respondents;

(4) Smart v. Schneiderman; Court of Claims; Westchester County; Attorney General Claim Number 123178; Judge Stephen Mignano; Case is not pending and was disposed approximately on 11/20/2014;

(5) Smart v. State of New York; Court of Claims; Westchester County; Judge Stephan Schick; Approximate Date of Filing: 1998; Case is not pending and was disposed.

## STATEMENT OF FACTS

24.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

25.     On November 15, 2012, at approximately 6:30p.m., without cause, Officer Gifford conducted a search of Plaintiff's cell and confiscated Plaintiff's non-serrated cake utensil. As such, prior to any factual or legal findings at any administrative hearings, Plaintiff was brought to Bedford Hills Correctional Facility's Special Housing Unit on November 16, 2012.

26.     The utensil in question had been in Plaintiff's possession for seventeen (17) years prior to this search. As such, it had withstood prior cell searches for nearly two decades prior to November 15, 2012.

27.     On November 16, 2012, Officer Gifford wrote a misbehavior report alleging rule violations 113.01 and 113.23, Possession of a Weapon and Contraband, respectively.

28.     On November 21, 2012, Plaintiff had a hearing conducted before Deputy Superintendent of Programs Joseph Joseph, and on November 27, 2012, was sentenced to six (6) months in the Special Housing Unit. Prior to the hearing, Plaintiff received a note from Deputy Superintendent of Security T. Fitzgerald, telling Plaintiff that he will not even think about releasing Plaintiff from the Special Housing Unit.

29.     Between that time and January of 2013, Plaintiff still did not receive her hearing disposition, an issue that she vehemently wrote about to T. Fitzgerald and Superintendent Sabina Kaplan, to no avail. Finally after a disposition was received, Plaintiff filed a grievance, facilitating a reversal of the hearing decision and a re-hearing.

30.     Plaintiff's reversal and re-hearing was ordered by Director of Disciplinary and Special Housing Donald Selsky, who did not allow Plaintiff out of the Special Housing Unit after Plaintiff had spent over sixty (60) days in said unit.

31.     After a Tier III re-hearing held at Bedford Hills Correctional Facility on January 15, 2013 before Lieutenant J. Vallo, Plaintiff was found guilty of the weapons possession charge, but not guilty of the contraband possession charge on January 22, 2013. As a result, Plaintiff was sentenced to a ninety (90) day period of solitary confinement.

32.    Plaintiffs arguments were rooted in that Plaintiff received this item many years ago, keeping it in open view for all of those years and not altering the item in any way. Plaintiff's cell underwent four (4) searches prior to November 15, 2012, without issue.

33.    Importantly, the item did not have a serrated edge and could not be used to cut, only rather to slice through soft cakes. This is what the item was used for by Plaintiff. In addition, the item itself was not entered into evidence, but rather a black and white photograph that effectively altered the item's appearance to look menacing and violent.

34.    On February 4, 2013 and February 6, 2013, both Plaintiff's then-counsel and Plaintiff herself submitted Administrative Appeals. On March 18, 2013, the disposition and solitary confinement sentence was affirmed.

35.    To date, Plaintiff's misbehavior report remains on her prison record and contributes to Plaintiff's being classified as a dangerous inmate, with infractions on her record. This is in strict contradiction of Plaintiff's true reputation as a model inmate who certainly has no aspirations of violence or possessing weapons at Bedford Hills Correctional Facility.

36.    Allowing Plaintiff's misbehavior report to remain on her prison record at Bedford Hills Correctional Facility and the New York State Department of Corrections and Community Supervision will hinder Plaintiff's future post-conviction efforts and act as a hurdle to those efforts in an unjust and improper manner.

37.    In particular, Plaintiff is now seeking to appeal to the Governor of New Hampshire in efforts to obtain executive clemency, in the form of a pardon or commutation. Plaintiff has various compelling arguments to obtain same and an administrative conviction of this nature would severely hinder those efforts, unjustly and improperly.

38.    As such, monetary compensation alone would certainly be inadequate to compensate Plaintiff for the vicious wrongs suffered at the hands of the staff at Bedford Hills Correctional Facility, New York State and New York State Department of Corrections and Community Supervision. Importantly, this case seeks to assist Plaintiff in obtaining freedom and liberty, both forms of relief that deem monetary compensation strongly inadequate.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983 against All Defendants

39.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

40.    Defendants, persons acting under color of state law, proximately caused Plaintiff's deprivations of federally protected rights.

41.    In particular, Defendants acted with deliberate indifference in interfering with Plaintiff's fundamental individual rights to liberty and property in such a way that was not reasonably related to any legitimate penological interest in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

42.    Defendants' conduct was not reasonably related to any legitimate government goal.

43.    Defendants engaged in deliberate and outrageous deprivations of Plaintiff's federally protected rights that shock the conscience in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

44.    The manner in which Plaintiff's administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined, Plaintiff's punishment of solitary

confinement prior to the initial hearing, re-hearing and after the re-hearing and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

45.     Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

46.     Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. §1983 against All Defendants

47.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

48.     Defendants aforementioned deprivations of Plaintiff's federally protected rights were effectuated without proper procedural safeguards and protections so as to afford Plaintiff the right to adequately defend herself from said deprivations.

49.     Defendants engaged in deliberate and outrageous deprivations of Plaintiff's federally protected rights that shock the conscience in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

50.     The manner in which Plaintiff's administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined, Plaintiff's punishment of solitary confinement prior to the initial hearing, re-hearing and after the re-hearing and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

51.     Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

52.     Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

## THIRD CLAIM FOR RELIEF
## 42 U.S.C. §1983 against All Defendants

53.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

54.     Defendants' aforementioned deprivations as it related to Plaintiff's prison conditions amounted to unquestioned and serious deprivations of basic human needs, deprivations of minimal civilized measures of life's necessities, were grossly disproportionate of any alleged prison violations and were wanton and unnecessary inflictions of pain in violation of The Eighth Amendment to the United States Constitution and 42 U.S.C. §1983.

55.     Defendants' deprivations were the result of their deliberate indifference and actual knowledge that they were subjecting Plaintiff to unconstitutional prison conditions.

56.     The manner in which Plaintiff's administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined, Plaintiff's punishment of solitary confinement prior to the initial hearing, re-hearing and after the re-hearing and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

57.     Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

58.     Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief from this Court:

1.    An Order directing Defendants to vacate, annul, void, withdraw and otherwise eliminate the aforementioned misbehavior report, administrative charges and convictions, hearing determinations and subsequent punishments from Plaintiff's prison, incarceration, administrative, disciplinary and all other records maintained, controlled and preserved by New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility;

2.    A declaratory judgment that the policies, practices, acts and omissions complained of herein violated Plaintiff's rights;

3.    Compensatory damages against each Defendant, jointly and severally;

4.    Punitive damages against Defendants;

5.    Retention of jurisdiction over Defendants until such time that the Court is satisfied that defendants' unlawful policies, practices, acts and omissions no longer exist and will not recur;

6.    Such further relief as the Court may deem just and proper, together with costs, expenses and disbursements of this action.

## DEMAND FOR JURY TRIAL

The Plaintiff requests a trial by jury on all issues triable by a jury.

Dated: October 29, 2015
         New York, New York

Dmitriy Shakhnevich, Esq.
**THE LAW FIRM OF DMITRIY**
**SHAKHNEVICH, PLLC**
**Attorneys for Plaintiff Pamela Smart**
65 Broadway, 7th Floor
New York, New York 10006
Tel: (212) 913-9703
Fax: (212) 913-9702

Plaintiff's Address:
Pamela Smart
DIN: 93G0356
Bedford Hills Correctional Facility
PO Box 1000
Bedford Hills, NY 10507

# EXHIBIT "A"

BEDFORD HILLS    Correctional Facility

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| SMART, PAMELA | 93G0356 | 114 B.27 |
| LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
| CELL 114-B-27 | 15 NOV 12 | 6.30 PM |

RULE VIOLATION(S) ♦ VIOLACIÓN/ES

113.10-AN INMATE SHALL NOT POSSESS A WEAPON OR DANGEROUS INSTRUMENT
BY DESCRIPTION OR APPEARANCE. 113.23 - AN INMATE SHALL NOT POSSESS ANY
ITEM UNLESS SPECIFCALLY AUTHORIZED BY THE SUPERINTENDENT.

I. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

ON THE ABOVE DATE AND TIME I OFFICER M CLIFFORD
FRISKED INMATE SMART # 93G0356 CELL. A 14" MANUFACTURED
PLASTIC CAKE KNIFE WHITE IN COLOR WAS FOUND IN THE
INMATES LOCKER ON THE BOTTOM SHELF. THE KNIFE WAS
SECURED AND TURNED OVER TO CAPTAIN A MONTEGARI
FOR TRANSPORTATION TO THE SERIOUS/DANGEROUS CONTRABAND
LOCKER. SMART WAS PRESENT DURING THE ENTIRE FRISK.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 16 NOV 12 | M CLIFFORD | | OFFICER |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS:  1. _____

2. _____    3. _____

NOTE: Fold back Page 2 on dotted line before completing below.

6. WERE OTHER INMATES INVOLVED?    YES ☐    NO ☒    IF YES, GIVE NAME & # _____
¿HUBO OTROS RECLUSOS ENVUELTOS?    sí ☐    NO ☐    DE SER SÍ DÉ LOS NOMBRES Y DIN _____

7. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION?    YES ☐    NO ☒
¿ESTUVO EL RECLUSO CONFINADO/RESTRINGIDO PREVIO AL INCIDENTE?    sí ☐    NO ☐    OR ♦ O

AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED?    YES ☒    NO ☐
¿SE CONFINÓ/RESTRINGIÓ AL RECLUSO COMO RESULTADO DE ESTE INCIDENTE?    sí ☐    NO ☐

8. WAS INMATE MOVED TO ANOTHER HOUSING UNIT?    YES ☒    NO ☐
¿MUDARON AL RECLUSO A OTRA UNIDAD DE VIVIENDA?    sí ☐    NO ☐
IF YES, (a) CURRENT HOUSING UNIT    SHU 22    (b) AUTHORIZED BY    LT LIHAYE
DER SER SÍ, (a) UNIDAD DE VIVIENDA ACTUAL _____    (b) AUTORIZADO POR _____

9. WAS PHYSICAL FORCE USED?    YES ☐    NO ☒    (IF YES, FILE FORM 2104)
¿SE USÓ FUERZA FÍSICA?    sí ☐    NO ☐    (DER SER SÍ, SOMETA EL FORMULARIO No. 2104) _____

AREA SUPERVISOR ENDORSEMENT _____
ENDOSO DEL SUPERVISOR DEL ÁREA _____

Distribution: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la resión)

EC.P004

BEDFORD HILL

TAPE NUMBER O1 - 05 - 13

DIN: 93G0356 NAME: SMART, PAMELA

LOCATION: 18-54-042

INCIDENT DATE & TIME:    11/15/12   06:30 PM   TIER 3

REVIEW DATE:             11/16/12                BY: LT   RATHBUN

DELIVERY DATE & TIME:    01/11/13   10:30 AM  BY: CO   BRANCH

HEARING START DATE & TIME:  1/15/13  10:11 A  BY: LT  J. VALLO

HEARING END DATE & TIME:    1/22/13  12:22 P  BY: LT  J. VALLO
WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? X O

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | | DISPOSITION |
|---|---|---|---|---|
| 113.10 | WEAPON | CO | GIFFORD | G |
| 113.23 | CONTRABAND | | | N/G |

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ | 
|---|---|---|---|---|---|---|---|
| A000 | SHU | 3 | 11/15/12 | 2/15/13 | — | — | — |
| E000 | PACKAGE | 3 | 11/15/12 | 2/15/13 | — | — | — |
| F000 | COMMISSARY | 3 | 11/15/12 | 2/15/13 | — | — | — |
| G000 | PHONES | 3 | 11/15/12 | 2/15/13 | — | — | — |

DIN: 9UG0356 NAME: SMART, PAMELA                    HEARING DATE: 1/22/13

A. STATEMENT OF EVIDENCE RELIED UPON:

① THE WRITTEN REPORT OF OFFICER M. GIFFORD STATING
HE FOUND A 14" PLASTIC CAKE KNIFE ON THE BOTTOM,
SHELF OF THE INMATE'S LOWER INSIDE OF THE INMATE'S
CELL, DURING A CELL SEARCH

② TESTIMONY OF THE INMATE ADMITTING OWNERSHIP OF
SAID KNIFE.

③ TESTIMONY OF THE INMATE AND DOCUMENTATION PROVIDED
BY THE INMATE WAS ALSO TAKEN INTO CONSIDERATION.

④ REVIEW OF THE INMATE'S PACKAGE ROOM FOLDER PROVIDED NO

B. REASONS FOR DISPOSITION: PROOF OF THE INMATE RECIEVING SAID KNIFE

POSSESSION OF SUCH A DANGEROUS INSTRUMENT HAS TO
BE TAKEN SERIOUSLY. THIS DISPOSITION WILL SERVE AS
A DETERRENT FOR OTHERS FROM POSSESSING SIMILIAR
ITEMS.

C. SPECIAL INSTRUCTION ON CORRESPONDENCE RESTRICTIONS AND REFERRALS

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: 1/22/13

_____          _____  1/22/13  12:22P
HEARING OFFICER SIGNATURE           INMATE SIGNATURE          DATE & TIME RECEIVED

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

_____ FOR TIER II HEARINGS-APPEAL TO SUPERINTENDENT WITHIN 72 HOURS.

__✓__ FOR TIER III HEARINGS-APPEAL TO COMMISSIONER WITHIN 30 DAYS.

**SUCCESSFUL PRINT COMPLETION***

C.R. DATE NONE.

INMATE: SMART, PAMELA                     DIN        C000031 LOCATION: D-BL 02B
INCIDENT DATE  1/15/13   INCIDENT TIME  9:15
INMATE    WAS    CONFINED
INMATE WAS NOT RELEASED AT REVIEW
HEARING OFFICER: CO    BRANCH              HEARING DATE/TIME  1/16/13  10:20 AM
RELEASED FROM PRECARTIONARY CONFINEMENT:
AUTHORIZED HEARSAY __ N/A __                DATE AUTHORIZED __ N/A __
ASSISTANT NAME
INTERVIEW DATE __ N/A __ WAIVED Rights      INTERVIEW TIME __ N/A __
EXTENSION NUMBER __ N/A __                  IF APPLICABLE:
IF APPLICABLE, CHECK REQUIRED DRUG TESTING FORMS PROVIDED TO INMATE
PURSUANT TO DIRECTIVE 4937 OR 4910:
    TEST REQUEST FORMS __ N/A __ TEST PROCEDURE FORMS __ N/A __
    TEST RESULT FORMS __ N/A __ APPENDIX C __ N/A __ OTHER (SPECIFY) __ N/A __
INMATE __ IS __ ENGLISH SPEAKING
A) IF NOT, WERE CHARGES TRANSLATED AND SERVED TO INMATE? __ N/A __
B) INTERPRETOR AT HEARING __ N/A __
HEARING BEGIN: DATE  1/16/13  TIME  10:11 A  END: DATE  1/22/13  TIME  12:22P
CHARGES: SPECIFY INMATE'S PLEA TO THE CHARGES CONSIDERED AT THE HEARING
CHARGE
NUMBER      DESCRIPTION OF CHARGES                     REPORTED BY            INMATE
113.10      WEAPON                             CO   GIFFORD                    N/G
113.23      CONTRABAND                         CO   GIFFORD                    N/G

SIGNATURE OF INMATE X _Pamela Smart_
                DATE  1/16/13                          TIME  10:11 A
WITNESSES:  IF NONE REQUESTED, CHECK HERE ___✓___
A)   REQUESTED BY INMATE                  TESTIFIED         IN INMATE'S PRESENCE
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __
B)   REQUESTED BY HEARING OFFICER         TESTIFIED         IN INMATE'S PRESENCE
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __
    _____            Y __ N __        Y __ N __

NOTE: IF ANY WITNESS IS DENIED OR IF A REQUESTED WITNESS TESTIFIES OUTSIDE THE
PRESENCE OF THE INMATE CHARGED, AND/OR THE INMATE IS NOT PERMITTED TO
REVIEW TESTIMONY OF SUCH WITNESS, FORM 2176 EXPLAINING THE REASON FOR THAT
DETERMINATION MUST BE GIVEN TO THE INMATE AND INCLUDED AS PART OF THE RECORD

HEARING OFFICER SIGNATURE: _____

*SUCCESSFUL PRINT COMPLETION**

MAR 2 0 2013

PLSNY-ALBANY

DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS - BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

BRIAN FISCHER
COMMISSIONER

JOSEPH BELLNIER
DEPUTY COMMISSIONER
CORRECTIONAL FACILITIES

REVIEW OF SUPERINTENDENT'S HEARING

NAME: SMART, PAMELA                    NO. 93G0356

HEARING FACILITY: BEDFORD HILLS

ON BEHALF OF THE COMMISSIONER AND IN RESPONSE TO YOUR RECENT
LETTER OF APPEAL, PLEASE BE ADVISED THAT YOUR SUPERINTENDENT'S HEARING OF
JANUARY 22, 2013, HAS BEEN REVIEWED AND AFFIRMED ON MARCH 18, 2013.

D. VENETTOZZI
ACTING DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM

CC: FACILITY SUPERINTENDENT
CENTRAL OFFICE FILES
S. HELLER, PLS/ALBANY

APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND
ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL
HOUSING/INMATE DISCIPLINE PROGRAM.