**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**PAMELA SMART (#93G0356), BEDFORD HILLS CORRECTIONAL FACILITY, BEDFORD HILLS, NEW YORK,**

**Plaintiff(s),**

**v.**

**M. GIFFORD, Corrections Officer, Bedford Hills Correctional Facility, JOSEPH JOSEPH, Deputy Superintendent of Programs, Bedford Hills Correctional Facility, DONALD SELSKY, Director of Disciplinary and Special Housing, Department of Corrections and Community Supervision, J. VALLO, Lieutenant, Bedford Hills Correctional Facility, SABINA KAPLAN, Superintendent, Bedford Hills Correctional Facility, T. FITZGERALD, Deputy Superintendent of Security, Bedford Hills Correctional Facility, JOHN and JANE DOEs 1- 100, JOHN and JANE DOE ENTITIES 1-10, all individuals, employees, agents, servants and entities of New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility, all whose true names and identities are unknown,**

**Defendant(s).**

**15 Civ. 08939**

# AMENDED COMPLAINT

under the Civil Rights Act, 42 U.S.C. §1983

**JURY TRIAL: [x] YES [] NO**

**ECF CASE**

## PRELIMINARY STATEMENT

1. Plaintiff Pamela Smart is a New York State inmate, currently incarcerated as a sentenced prisoner in Bedford Hills Correctional Facility, New York. She has been incarcerated at Bedford Hills Correctional Facility for twenty-one (21) years.

2. On November 12, 2012, Plaintiff's prison cell at Bedford Hills Correctional Facility was searched. That search produced a plastic utensil in the form of a non-serrated cake instrument, which was confiscated from Plaintiff's cell.

3. On November 16, 2012, a misbehavior report was written charging Plaintiff with Possession of a Weapon and Contraband. Administrative procedures and hearings, in which Plaintiff vehemently and intensely presented her defense, resulted in Plaintiff being found not guilty of possession a weapon, but guilty of possession of contraband.

4. Plaintiff actively engaged the prison administrative process but could not have a just and proper result reached in her case. As such, Plaintiff brings the instant proceeding.

**JURISDICTION**

5. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

6. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and pursuant to 28 U.S.C. §1343(a)(3) and (a)(4).

**VENUE**

7. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

8. Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. §1391(a)(2) and (b)(2 ) because the events giving rise to the claims occurred within this district.

**PARTIES**

9. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

10. As previously mentioned, Plaintiff Pamela Smart is a New York State inmate, currently incarcerated as a sentenced prisoner in Bedford Hills Correctional Facility, New York. She has been incarcerated at Bedford Hills Correctional Facility for twenty-one (21) years.

11. Corrections Officer M. Gifford was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Officer Gifford is being sued in official and individual capacities.

12. Deputy Superintendent of Programs Joseph Joseph was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Deputy Superintendent Joseph is being sued in official and individual capacities.

13. Director of Disciplinary and Special Housing Donald Selsky was employed by the Department of Corrections and Community Supervision during the events that are the subject of this lawsuit. Director Selsky is being sued in official and individual capacities.

14. Lieutenant J. Vallo was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Lieutenant Vallo is being sued in official and individual capacities.

15. Superintendent Sabina Kaplan was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Superintendent Kaplan is being sued in official and individual capacities.

16. Deputy Superintendent of Security T. Fitzgerald was employed by Bedford Hills Correctional Facility during the events that are the subject of this lawsuit. Deputy Superintendent Fitzgerald is being sued in official and individual capacities.

17. John and Jane Doe 1-100 and John and Jane Doe Entities 1-10 are all individuals, employees, agents, servants and entities of New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility. Said Defendants were employed by New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility, during the events that are the subject of this lawsuit. Said Defendants are being sued in official and individual capacities.

18. At all relevant times, all Defendants acted under color of state law and within the scope of their employment.

**EXHAUSTION**

19. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

20. Plaintiff has exhausted such administrative remedies as were available to her. Plaintiff's grievance forms and official Replies are attached hereto as Exhibit "A."

**PREVIOUS LAWSUITS**

21. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

22. Plaintiff has previously litigated this matter in New York State court, as demonstrated in number 23(3) below.

23. Upon information and belief, the following is a list of lawsuits involving Plaintiff in connection with Plaintiff's imprisonment:

(1) Smart v. Fischer; Supreme Court; Albany County; Index Number: 2662/2014; Judge Christopher McCarthy; Approximate Date of Filing: 6/6/2014; Case is not pending and was disposed approximately on 1/21/2015; Judgment in favor of Respondents;

(2) Smart v. Prack; Supreme Court; Albany County; Index Number: 650/2013; Judge Gerald Connolly; Approximate Date of Filing: 3/12/2013; Case is not pending and was disposed approximately on 7/22/2013;

(3) Smart v. Fischer; Supreme Court; Albany County; Index Number: 2343/2013; Judge Stephan Schick; Approximate Date of Filing: 4/26/2013; Case is not pending and was disposed approximately on 8/12/2013; Judgment in favor of Respondents;

(4) Smart v. Schneiderman; Court of Claims; Westchester County; Attorney General Claim Number 123178; Judge Stephen Mignano; Case is not pending and was disposed approximately on 11/20/2014;

(5) Smart v. State of New York; Court of Claims; Westchester County; Judge Stephan Schick; Approximate Date of Filing: 1998; Case is not pending and was disposed.

## STATEMENT OF FACTS

24. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

25. On November 15, 2012, at approximately 6:30p.m., without cause, Officer Gifford conducted a search of Plaintiff's cell and confiscated Plaintiff's non-serrated cake utensil. As such, prior to any factual or legal findings at any administrative hearings, Plaintiff was brought to Bedford Hills Correctional Facility's Special Housing Unit on November 16, 2012.

26. During the search on November 15, 2012, but prior to the confiscation of Plaintiff's utensil, Officer Gifford inspected said utensil two (2) times. Both times, Officer Gifford placed the utensil back in Plaintiff's locker, after having discussions with Plaintiff about the origin and legality of the utensil. After conferring with another Officer and a Supervisor, both of whom had no discussions with Plaintiff and did not provide a clear answer as to whether the utensil was disallowed, did Officer Gifford confiscate the utensil.

27. The utensil in question had been in Plaintiff's possession for seventeen (17) years prior to this search. As such, it had withstood prior cell searches for nearly two decades prior to November 15, 2012.

28. On November 16, 2012, Officer Gifford wrote a misbehavior report alleging rule violations 113.01 and 113.23, Possession of a Weapon and Contraband, respectively.

29. On November 21, 2012, Plaintiff had a hearing conducted before Deputy Superintendent of Programs Joseph Joseph, and on November 27, 2012, was sentenced to six (6) months in the Special Housing Unit. Prior to the hearing, Plaintiff received a note from Deputy Superintendent of Security T. Fitzgerald, telling Plaintiff that he will not even think about releasing Plaintiff from the Special Housing Unit.

30. Superintendents command positions of authority at Bedford Hills Correctional Facility. Common practice at Bedford Hills Correctional Facility indicates that Superintendents, while not directly ruling on material issues at actual disciplinary proceedings, advise Lieutenants on issues to be disputed at said hearings. In this case, due to the aforementioned authority held by Superintendent Fitzgerald and his pre-determination of the hearing in Plaintiff's case, the hearing was held in strict violation of Plaintiff's due process rights, in contradiction of the law.

31. Moreover, Superintendent Fitzgerald had made known to Plaintiff on prior

occasions that Superintendent Fitzgerald held a personal dislike for Plaintiff and as such, had made indications to Plaintiff that the aforementioned comments were designed to punish Plaintiff.

32. Between that time and January of 2013, Plaintiff still did not receive her hearing disposition, an issue that she vehemently wrote about to T. Fitzgerald and Superintendent Sabina Kaplan, to no avail. Finally after a disposition was received, Plaintiff filed a grievance, facilitating a reversal of the hearing decision and a re-hearing.

33. Inmates are to receive disciplinary dispositions within twenty-four (24) hours of the completion of any hearings. Due to the fact that Plaintiff did not receive her disposition timely, she was unable to appeal the disciplinary ruling in a timely fashion. Particularly because the hearing result was partially reversed, Plaintiff could have been released from the Special Housing Unit pending the re-hearing. However, because the disposition took so long for Plaintiff to obtain, such a release was not possible as the re-hearing was held just as the appeal was decided.

34. Plaintiff's reversal and re-hearing was ordered by Director of Disciplinary and Special Housing Donald Selsky, who did not allow Plaintiff out of the Special Housing Unit after Plaintiff had spent over sixty (60) days in said unit.

35. After a Tier III re-hearing held at Bedford Hills Correctional Facility on January 15, 2013 before Lieutenant J. Vallo, Plaintiff was found guilty of the weapons possession charge, but not guilty of the contraband possession charge on January 22, 2013. As a result, Plaintiff was sentenced to a ninety (90) day period of solitary confinement.

36. Plaintiffs arguments were rooted in that Plaintiff received this item many years ago, keeping it in open view for all of those years and not altering the item in any way. Plaintiff's cell underwent four (4) searches prior to November 15, 2012, without issue.

37. Importantly, the item did not have a serrated edge and could not be used to cut, only rather to slice through soft cakes. This is what the item was used for by Plaintiff. In addition, the item itself was not entered into evidence, but rather a black and white photograph that effectively altered the item's appearance to look menacing and violent.

38. While confined to the Special Housing Unit, Plaintiff was let outside of a cell for one (1) hour a day, to a cage with a basketball hoop and deflated ball. As winter came, the ground filled with snow and ice without being cleaned. Home and attorney phone calls were completely disallowed.

39. Plaintiff also suffers from depression and would see a mental health counselor to address her condition, but with her being confined to the Special Housing Unit, her condition worsened. Plaintiff also would not be able to sleep or tell time as the cell and corridor lights in her area would never shut off.

40. Plaintiff's fellow inmates, who were also confined to the Special Housing Unit, were all placed on one side of a thick concrete wall, while Plaintiff was placed on the other side, so human contact was almost entirely non-existent. Plaintiff was only allowed three (3) showers per week, irrespective of Plaintiff's hygienic state or menstrual cycle.

41. Plaintiff was not allowed to participate in church programs or bible study and was further disallowed from continuing her job as a teacher's aide at Bedford Hills Correctional Facility.

42. In addition, Plaintiff was consistently taunted and harassed by corrections officers, who called Plaintiff "Buffy the Vampire Slayer," and "Jason," due to her cake-utensil incident, intentionally adding insult to Plaintiff already fragile position.

43. On February 4, 2013 and February 6, 2013, both Plaintiff's then-counsel and Plaintiff herself submitted Administrative Appeals. On March 18, 2013, the disposition and solitary confinement sentence was affirmed.

44. To date, Plaintiff's misbehavior report remains on her prison record and contributes to Plaintiff's being classified as a dangerous inmate, with infractions on her record. This is in strict contradiction of Plaintiff's true reputation as a model inmate who certainly has no aspirations of violence or possessing weapons at Bedford Hills Correctional Facility.

45. Allowing Plaintiff's misbehavior report to remain on her prison record at Bedford Hills Correctional Facility and the New York State Department of Corrections and Community Supervision will hinder Plaintiff's future post-conviction efforts and act as a hurdle to those efforts in an unjust and improper manner.

46. In particular, Plaintiff is now seeking to appeal to the Governor of New Hampshire in efforts to obtain executive clemency, in the form of a pardon or commutation. Plaintiff has various compelling arguments to obtain same and an administrative conviction of this nature would severely hinder those efforts, unjustly and improperly.

47. As such, monetary compensation alone would certainly be inadequate to compensate Plaintiff for the vicious wrongs suffered at the hands of the staff at Bedford Hills Correctional Facility, New York State and New York State Department of Corrections and Community Supervision. Importantly, this case seeks to assist Plaintiff in obtaining freedom and liberty, both forms of relief that deem monetary compensation strongly inadequate.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983 against All Defendants

48. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

49. Defendants, persons acting under color of state law, proximately caused Plaintiff's deprivations of federally protected rights.

50. In particular, Defendants acted with deliberate indifference in interfering with Plaintiff's fundamental individual rights to liberty and property in such a way that was not reasonably related to any legitimate penological interest in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

51. Defendants' conduct was not reasonably related to any legitimate government goal.

52. Defendants engaged in deliberate and outrageous deprivations of Plaintiff's federally protected rights that shock the conscience in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

53. The manner in which Plaintiff's cell search and administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined by Superintendent Fitzgerald and Lieutenant Vallo, Plaintiff's punishment of solitary confinement prior to the initial hearing, re-hearing and after the re-hearing, including Plaintiff's terrifying conditions in the Special Housing Unit and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

54. Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

55. Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983 against All Defendants**

56. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

57. Defendants aforementioned deprivations of Plaintiff's federally protected rights were effectuated without proper procedural safeguards and protections so as to afford Plaintiff the right to adequately defend herself from said deprivations.

58. Defendants engaged in deliberate and outrageous deprivations of Plaintiff's federally protected rights that shock the conscience in violation of The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

59. The manner in which Plaintiff's cell search and administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined by Superintendent Fitzgerald and Lieutenant Vallo, Plaintiff's punishment of solitary confinement prior to the initial hearing, re-hearing and after the re-hearing, including Plaintiff's terrifying conditions in the Special Housing Unit and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

60. Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

61. Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. §1983 against All Defendants**

62. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

63. Defendants' aforementioned deprivations as it related to Plaintiff's prison conditions amounted to unquestioned and serious deprivations of basic human needs, deprivations of minimal civilized measures of life's necessities, were grossly disproportionate of any alleged prison violations and were wanton and unnecessary inflictions of pain in violation of The Eighth Amendment to the United States Constitution and 42 U.S.C. §1983.

64. Defendants' deprivations were the result of their deliberate indifference and actual knowledge that they were subjecting Plaintiff to unconstitutional prison conditions.

65. The manner in which Plaintiff's cell search and administrative hearings were conducted, including signals that Plaintiff's hearings were pre-determined by Superintendent Fitzgerald and Lieutenant Vallo, Plaintiff's punishment of solitary confinement prior to the initial hearing, re-hearing and after the re-hearing, including Plaintiff's terrifying conditions in the Special Housing Unit and enormous delays in Plaintiff's obtaining hearing dispositions and results are stark demonstrations of the above.

66. Defendants' actions, conduct and decisions were arbitrary and capricious, all undertaken without sound basis or reason in the law.

67. Any punishment imposed upon Plaintiff as a result of Defendants' conduct was imposed due to an abuse of discretion, as said punishment was hugely disproportionate to any alleged offenses, in light of all the circumstances and was shocking to any sense of fairness.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief from this Court:

1. An Order directing Defendants to vacate, annul, void, withdraw and otherwise eliminate the aforementioned misbehavior report, administrative charges and convictions, hearing determinations and subsequent punishments from Plaintiff's prison, incarceration, administrative, disciplinary and all other records maintained, controlled and preserved by New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility;

2. An Order preventing, prohibiting, disallowing and otherwise restricting, directly and indirectly, Defendants to maintain Plaintiff's misbehavior report, administrative charges and convictions, hearing determinations and subsequent punishments on Plaintiff's prison, incarceration, administrative, disciplinary and all other records maintained, controlled and preserved by New York State, New York State Department of Corrections and Community Supervision and Bedford Hills Correctional Facility;

3. A declaratory judgment that the policies, practices, acts and omissions complained of herein violated Plaintiff's rights;

4. Compensatory damages against each Defendant, jointly and severally;

5. Punitive damages against Defendants;

6. Retention of jurisdiction over Defendants until such time that the Court is satisfied that defendants' unlawful policies, practices, acts and omissions no longer exist and will not recur;

7. Such further relief as the Court may deem just and proper, together with costs, expenses and disbursements of this action.

**DEMAND FOR JURY TRIAL**

The Plaintiff requests a trial by jury on all issues triable by a jury.

Dated: July 26, 2016
New York, New York

Dmitriy Shakhnevich, Esq.
**THE LAW FIRM OF DMITRIY SHAKHNEVICH, PLLC**
**Attorneys for Plaintiff Pamela Smart**
65 Broadway, 7th Floor
New York, New York 10006
Tel: (212) 913-9703
Fax: (212) 913-9702

Plaintiff's Address:
Pamela Smart
DIN: 93G0356
Bedford Hills Correctional Facility
PO Box 1000
Bedford Hills, NY 10507

# EXHIBIT "A"

BEDFORD HILLS Correctional Facility

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NUM. | HOUSING LOCATION ♦ CELDA |
| --- | --- | --- |
| SMART, PAMELA | 93G0356 | 114 B 27 |
| **LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE** | **INCIDENT DATE ♦ FECHA** | **INCIDENT TIME ♦ HORA** |
| CELL 114-B-27 | 15 NOV 12 | 6:30 PM |

RULE VIOLATION(S) ♦ VIOLACIONES

113.10-AN INMATE SHALL NOT POSSESS A WEAPON OR DANGEROUS INSTRUMENT BY DESCRIPTION OR APPEARANCE. 113.23 - AN INMATE SHALL NOT POSSESS ANY ITEM UNLESS SPECIFICALLY AUTHORIZED BY THE SUPERINTENDENT.

I. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE

ON THE ABOVE DATE AND TIME I OFFICER MCGIFFORD FRISKED INMATE SMART, P 93G0356 CELL. A 14" MANUFACTURED PLASTIC CAKE KNIFE WHITE IN COLOR WAS FOUND IN THE INMATES LOCKER ON THE BOTTOM SHELF. THE KNIFE WAS SECURED AND TURNED OVER TO CAPTAIN A MONTEBARI FOR TRANSPORTATION TO THE SERIOUS/DANGEROUS CONTRABAND LOCKER. SMART WAS PRESENT DURING THE ENTIRE FRISK

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO |
| --- | --- | --- | --- |
| 16 NOV 12 | M. GIFFORD | [signature] | OFFICER |

II. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any) — ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)

SIGNATURES: FIRMAS: 1. ______ 2. ______

NOTE: Fold back Page 2 on dotted line before completing below.

3. WERE OTHER INMATES INVOLVED? YES ☐ NO ☒ IF YES, GIVE NAME & #

¿HUBO OTROS RECLUSOS ENVUELTOS? SI ☐ NO ☐ DE SER SI DE LOS NOMBRES Y DIN

4. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION? YES ☐ NO ☒

¿ESTUVO EL RECLUSO CONFINADO/RESTRINGIDO PREVIO AL INCIDENTE? SI ☐ NO ☐

AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED? YES ☒ NO ☐

¿SE CONFINÓ/RESTRINGIÓ AL RECLUSO COMO RESULTADO DE ESTE INCIDENTE? SI ☐ NO ☐

5. WAS INMATE MOVED TO ANOTHER HOUSING UNIT? YES ☒ NO ☐

¿MUDARON AL RECLUSO A OTRA UNIDAD DE VIVIENDA? SI ☐ NO ☐

IF YES, (a) CURRENT HOUSING UNIT / DE SER SI, (a) UNIDAD DE VIVIENDA ACTUAL: SHU 22 (b) AUTHORIZED BY / (b) AUTORIZADO POR: LT LIHAYE

6. WAS PHYSICAL FORCE USED? YES ☐ NO ☒ (IF YES, FILE FORM 2104)

¿SE USÓ FUERZA FISICA? SI ☐ NO ☐ (DE SER SI, SOMETA EL FORMULARIO No. 2104)

AREA SUPERVISOR ENDORSEMENT / ENDOSO DEL SUPERVISOR DEL AREA: [signature]

Distribution: WHITE - Disciplinary Office CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria AMARILLA - Recluso (después de la revisión)

SUPERINTENDENT HEARING DISPOSITION RENDERED

BEDFORD HILLS

TAPE NUMBER 01-05-13

DIN: [illegible] NAME: SMART, PAMELA

LOCATION: [illegible]

INCIDENT DATE & TIME: [illegible] 06:30 PM TIER 3

REVIEW DATE: [illegible] BY: LT [illegible]

DELIVERY DATE & TIME: 01/11/13 10:00 AM BY: CO BRANCH

HEARING START DATE & TIME: 1/15/13 10:11 A BY: LT J. VALLO

HEARING END DATE & TIME: 1/22/13 12:22 P BY: LT J. VALLO

WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? X (N)

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | DISPOSITION |
|---|---|---|---|
| 113.10 | WEAPON | CO GIFFORD | G |
| 113.[illegible] | CONTRABAND | | N/G |

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE AMOUNT OF FIVE ($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

| PENALTY TYPE | DESCRIPTION | PENALTY (MO) | START DATE | RELEASE DATE | SUSPEND NO DAYS | DEFERRED NO DAYS | RESTITUTION AMT |
|---|---|---|---|---|---|---|---|
| A000 | SHU | 3 | 11/15/12 | 2/15/13 | — | — | — |
| E000 | PACKAGE | 3 | 11/15/12 | 2/15/13 | — | — | — |
| F000 | COMMISSARY | 3 | 11/15/12 | 2/15/13 | — | — | — |
| G000 | PHONES | 3 | 11/15/12 | 2/15/13 | — | — | — |

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES PAGE

DIN: [illegible] NAME: SMART, PAMELA HEARING DATE: 1/22/13

4. STATEMENT OF EVIDENCE RELIED UPON:

① THE WRITTEN REPORT OF OFFICER M. GIFFORD STATING HE FOUND A 14" PLASTIC CAKE KNIFE ON THE BOTTOM SHELF OF THE INMATES LOCKER INSIDE OF THE INMATE'S CELL, DURING A CELL SEARCH.
② TESTIMONY OF THE INMATE ADMITTING OWNERSHIP OF SAID KNIFE.
③ TESTIMONY OF THE INMATE AND DOCUMENTATION PROVIDED BY THE INMATE WAS ALSO TAKEN INTO CONSIDERATION.
④ REVIEW OF THE INMATE'S PACKAGE ROOM FOLDER PROVIDED NO PROOF OF THE INMATE RECEIVING SAID KNIFE.

5. REASONS FOR DISPOSITION:

POSSESSION OF SUCH A DANGEROUS INSTRUMENT HAS TO BE TAKEN SERIOUSLY. THIS DISPOSITION WILL SERVE AS A DETERRENT FOR OTHERS FROM POSSESSING SIMILIAR ITEMS.

6. SPECIAL INSTRUCTION ON CORRESPONDENCE RESTRICTIONS AND REFERRALS

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: 1/22/13

[signature] HEARING OFFICER SIGNATURE [signature] INMATE SIGNATURE 1/22/13 12:22P DATE & TIME RECEIVED

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

___ FOR TIER II HEARINGS-APPEAL TO SUPERINTENDENT WITHIN 72 HOURS.

✓ FOR TIER III HEARINGS-APPEAL TO COMMISSIONER WITHIN 30 DAYS.

**SUCCESSFUL PRINT COMPLETION**

[illegible]

[illegible] PAMELO [illegible]

INCIDENT DATE [illegible] INCIDENT TIME [illegible]

INMATE WAS CONFINED [illegible]

[illegible] OFFICER'S ID [illegible]

[illegible] N/A

[illegible] Waived Rights [illegible] N/A

[illegible] DATE N/A [illegible] TIME

EXTENSION NUMBER N/A

IF APPLICABLE, CHECK REQUIRED DRUG TESTING FORMS PROVIDED TO INMATE PURSUANT TO DIRECTIVE 4937 OR 4938:

[illegible] REQUEST FORM N/A [illegible] PROCEDURE FORMS N/A

[illegible] FORMS N/A APPENDIX C N/A OTHER SPECIFY: N/A

INMATE IS ENGLISH SPEAKING

A) IF NOT, WERE CHARGES TRANSLATED AND SERVED TO INMATE? N/A

B) INTERPRETER ID [illegible] N/A

HEARING BEGIN: DATE 1/16/13 TIME 10:11A END: DATE 1/22/13 TIME 12:22P

CHARGES: SPECIFY INMATE'S PLEA TO THE CHARGES [illegible]

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | | PLEA |
|---|---|---|---|---|
| [illegible] | WEAPON | CO | [illegible] | N/G |
| [illegible] | CONTRABAND | CO | [illegible] | N/G |

SIGNATURE OF INMATE X [signature]

DATE 1/16/13 TIME 10:11A

WITNESSES: IF NONE REQUESTED, CHECK HERE ✓

A) REQUESTED BY INMATE TESTIFIED IN INMATE'S PRESENCE

B) CALLED BY HEARING OFFICER TESTIFIED IN INMATE'S PRESENCE

NOTE: IF ANY WITNESS IS DENIED OR IF A REQUESTED WITNESS TESTIFIED OUTSIDE THE PRESENCE OF THE INMATE CHARGED, AND/OR THE INMATE IS NOT PERMITTED TO REVIEW TESTIMONY OF SUCH WITNESS, FORM 2176 EXPLAINING THE REASON FOR THAT DETERMINATION MUST BE GIVEN TO THE INMATE AND INCLUDED AS PART OF THE RECORD.

HEARING OFFICER SIGNATURE: [signature]

SUCCESSFUL PRINT COMPLETION

RECEIVED
MAR 20 2013
PLSNY-ALBANY

50 H

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS - BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

BRIAN FISCHER
COMMISSIONER

JOSEPH BELLNIER
DEPUTY COMMISSIONER
CORRECTIONAL FACILITIES

REVIEW OF SUPERINTENDENT'S HEARING

NAME: SMART, PAMELA NO. 93G0356

HEARING FACILITY: BEDFORD HILLS

ON BEHALF OF THE COMMISSIONER AND IN RESPONSE TO YOUR RECENT LETTER OF APPEAL, PLEASE BE ADVISED THAT YOUR SUPERINTENDENT'S HEARING OF JANUARY 22, 2013, HAS BEEN REVIEWED AND AFFIRMED ON MARCH 18, 2013.

D. VENETTOZZI
ACTING DIRECTOR, SPECIAL HOUSING/
INMATE DISCIPLINARY PROGRAM

CC: FACILITY SUPERINTENDENT
CENTRAL OFFICE FILES
S. HELLER, PLS/ALBANY

APPEAL DECISION RENDERED PURSUANT TO SECTION 254.8 OF CHAPTER V AND ELECTRONICALLY PRODUCED UPON THE AUTHORITY OF THE DIRECTOR OF SPECIAL HOUSING/INMATE DISCIPLINE PROGRAM.