UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAMELA SMART,

                        Plaintiff,

     -v-

CORRECTIONS OFFICER M. GIFFORD,
Bedford Hills Correctional Facility, JOSEPH
JOSEPH, Deputy Superintendent of Programs,
Bedford Hills Correctional Facility, DONALD
SELSKY, Director of Disciplinary and Special
Housing, Department of Corrections and
Community Supervision, LIEUTENANT J.
VALLO, *Bedford Hills Correctional Facility,*
SUPERINTENDENT SABRINA KAPLAN,
*Bedford Hills Correctional Facility,* T.
FITZGERALD, *Deputy Superintendent of
Security, Bedford Hills Correctional Facility,*
JOHN AND JANE DOE #1–100, JOHN AND
JANE DOE ENTITIES #1–10,

                        Defendants.

Case No. 15-CV-8939 (KMK)

OPINION & ORDER

---

Appearances:

Dmitriy Shakhnevich, Esq.
The Law Firm of Dmitriy Shakhnevich
Brooklyn, NY
*Counsel for Plaintiff*

Barbara K. Hathaway, Esq.
Steven N. Schulman, Esq.
John E. Knudsen, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

     Plaintiff Pamela Smart ("Plaintiff") filed the instant Action pursuant to 42 U.S.C. § 1983,

against Correction Officer M. Gifford ("Gifford"); Deputy Superintendent Joseph Joseph

("Joseph"); Director of Disciplinary and Special Housing, Department of Corrections and Community Supervision ("DOCCS") Donald Selsky ("Selsky"); Lieutenant J. Vallo ("Vallo"); Superintendent Sabrina Kaplan ("Kaplan"); Deputy Superintendent T. Fitzgerald ("Fitzgerald"); John and Jane Doe #1–100; and John and Jane Doe Entities #1–10 (collectively "Defendants").[1] Plaintiff alleges that Defendants violated her rights under the Eighth and Fourteenth Amendments of the United States Constitution by refusing to allow Plaintiff an impartial hearing officer during her disciplinary hearings, failing to provide Plaintiff with a written disposition of her initial hearing, subjecting her to the Special Housing Unit ("SHU") as a result of a hearing based on insufficient evidence, and subjecting her to cruel and unusual conditions of confinement while in SHU. (*See generally* Am. Compl. (Dkt. No. 29).) Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Dkt. No. 49.) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual History

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion. Plaintiff is an inmate at Bedford Hills Correctional Facility ("Bedford Hills"), where, as of the time of the Amended Complaint, she has been incarcerated for 21 years. (Am. Compl. ¶ 1.) At approximately 6:30 P.M. on

---

[1] Although the Complaint lists John and Jane Doe #1–100 and John and Jane Doe Entities #1–10 as Defendants in this Action, Plaintiff has failed to allege in the body of the Complaint any facts about these Defendants and has not sought any assistance in identifying them. Moreover, in Plaintiff's Amended Complaint, she has still not identified these Defendants or otherwise served them. Therefore, the John Doe and Jane Doe Defendants are dismissed from this Action, and the Clerk of Court is directed to amend the caption accordingly.

November 15, 2012, Gifford searched Plaintiff's cell, allegedly without cause, wherein he located and confiscated a plastic, "non-serrated cake utensil." (*Id.* ¶ 25.) During this search, Gifford inspected the utensil twice, discussed the utensil with Plaintiff, and twice returned the utensil to Plaintiff's locker. (*See id.* ¶ 26.) However, after conferring with an unidentified officer and an unidentified supervisor, Gifford decided to confiscate the utensil. (*See id.*) Plaintiff alleges that, prior to the confiscation, she possessed this utensil at Bedford Hills for 17 years, and also that it "could not be used to cut, [but] only . . . to slice through soft cakes," though it is not alleged whether Gifford was specifically made aware of this during the search. (*Id.* ¶ 37.)

The following day, Gifford wrote a misbehavior report (the "Report") alleging Plaintiff had violated disciplinary rules 113.01 and 113.23, possession of a weapon and possession of contraband, respectively. (*See id.* ¶ 28.) Upon the filing of the Report on November 16, 2012, Plaintiff was placed in the SHU at Bedford Hills. (*See id.* ¶ 25.) Prior to Plaintiff's hearing regarding the Report, she allegedly received a note from Fitzgerald, who informed Plaintiff that "he will not even think about releasing Plaintiff from [SHU]." (*Id.* ¶ 29.) Plaintiff claims that Fitzgerald had previously made it known to Plaintiff that he "held a personal dislike for [her]." (*Id.* ¶ 31.) Plaintiff's hearing was then held at Bedford Hills before Joseph on November 21, 2012. (*See id.* ¶ 29.) Plaintiff makes no allegations as to what took place at this hearing, but alleges that on November 27, 2012, Joseph found Plaintiff guilty of both charges and sentenced her to six months in SHU. (*See id.*)

Following the hearing, Plaintiff alleges that she did not receive a written copy of the November 27, 2012 disposition until some point in January 2013. (*See id.* ¶ 32.) Plaintiff wrote to both Fitzgerald and Kaplan regarding this issue, to no avail. (*See id.*) Ultimately, Plaintiff did

receive a copy of the written disposition and thereafter filed an appeal, which led to Selsky vacating the prior disposition and ordering a new hearing. (*See id.* ¶ 34.) At this time, Plaintiff had served more than 60 days in SHU. (*See id.*)

Selsky's decision led to the commencement of a new hearing before Vallo on January 15, 2013. (*See id.* ¶ 35.) During this hearing, Plaintiff argued that she had received the utensil many years ago, had not made any alterations to its non-serrated nature, had kept the utensil in plain view ever since, and had no issues in keeping the utensil in her cell during four searches that took place prior to the November 15, 2012 search. (*See id.* ¶ 36.) Though the utensil itself was not entered into evidence, Vallo reviewed a black and white photograph of it. (*See id.* ¶ 37.) Plaintiff alleges this photograph "effectively altered the item's appearance to look menacing and violent." (*Id.*)

On January 22, 2013, Vallo found Plaintiff guilty of violating disciplinary rule 113.01—the weapons charge—though not guilty of violating rule 113.23—the contraband charge. (*See id.* ¶ 35.) Plaintiff was sentenced to 90 days in SHU, though she was credited for time served prior to the January 22, 2013 disposition. (*See id.* Ex. A at unnumbered 2.)

During her time in SHU, Plaintiff was confined in her cell for 23 hours each day, with one hour allotted for physical activity. (*See id.* ¶ 38.) Plaintiff alleges that this physical activity was limited to a caged area where, during winter, "the ground filled with snow and ice without being cleaned." (*Id.*) She could not access the phone, nor participate in any church programs, bible study, or continue as a teacher's aide at Bedford Hills. (*See id.* ¶¶ 38, 41.) Plaintiff was unable to sleep or tell time, as the lights in her area of SHU, "would never shut off," (*id.* ¶ 39), and was placed in a position in SHU that deprived her of human contact "almost entirely," (*id.* ¶ 40). Plaintiff was allowed three showers per week, regardless of her "hygienic state or

menstrual cycle," (*id.*), and was "taunted and harassed" by unnamed officers who called her "Buffy the Vampire Slayer" and "Jason," (*id.* ¶ 42). As a result, Plaintiff now seeks an Order directing Defendants to "vacate . . . and otherwise eliminate" the Report, charges, convictions, hearing determinations, and punishments from Plaintiff's records maintained by DOCCS and Bedford Hills, as well as unspecified "[c]ompensatory damages." (*Id.* at unnumbered 13.)

In February 2013, Plaintiff and Plaintiff's then-counsel filed an administrative appeal of the January 22, 2013 hearing. (*See id.* ¶ 43.)[2] After a review of the record, the disposition and penalty issued at the January 22, 2013 hearing was affirmed. (*See id.*) Plaintiff thereafter brought an Article 78 proceeding in the New York Supreme Court, Albany County on April 26, 2013. (*See id.* ¶ 23(3).) This case was transferred to the Appellate Division, Third Department, pursuant to CPLR § 7804(g) in August 2013. (*See id.*) Plaintiff, by counsel, submitted a brief in support of her petition on April 3, 2014, arguing that substantial evidence did not support the disposition, that Plaintiff was prejudiced by Vallo's impartiality, that Plaintiff was unable to be present and comment on all evidence used at the hearing, and that the sentence of 90 days in SHU was outrageous and excessive. (Decl. of Steven N. Schulman, Esq., in Supp. of Mot. To Dismiss ("Schulman Decl.") Ex. D ("Smart Article 78 Brief") at 8–25, *Smart v. Fischer*, 994 N.Y.S.2d 735 (N.Y. App. Div. 2014); *see also* Schulman Decl. Ex. B ("Smart Article 78 Petition") at ¶¶ 47–73.)[3] The Appellate Division affirmed the disposition and punishment issued

---

[2] Plaintiff alleges that appeals were filed on both February 4, 2013 and February 6, 2013, and that such appeals were filed by Plaintiff's then-counsel and Plaintiff herself. (*See* Am. Compl. ¶ 43.) It is unclear from the Amended Complaint which of those appeals was filed on those respective dates, but it is immaterial to the Opinion.

[3] In light of the fact that Amended Complaint mentions Plaintiff's prior Article 78 proceedings, (*see* Am. Compl. ¶¶ 22–23, 23(3)), the Court properly considers the related judgments as incorporated by reference, *see Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (explaining that a court may consider "documents appended to the complaint

at the disciplinary hearing, finding that there was "substantial evidence to support the determination of guilt," and determined that the "remaining claims, to the extent that they are preserved for . . . review, have been examined and found to lack merit." *Smart v. Fischer*, 994 N.Y.S.2d 735, 736 (N.Y. App. Div. 2014).

B.  Procedural History

Plaintiff filed her Complaint on November 13, 2015.  (*See* Compl. (Dkt. No. 2).)  At a conference on June 22, 2016, the Court informed Plaintiff that she may amend her Complaint by July 22, 2016.  (*See* Dkt. (Minute Entry June 22, 2016).)  After an extension was granted, (*see* Order (Dkt. No. 27)), Plaintiff filed her Amended Complaint on July 26, 2016, alleging violations of the Eighth and Fourteenth Amendments, and naming Joseph, Kaplan, Gifford, Selsky, Fitzgerald, and Vallo as Defendants, as well as several John and Jane Doe individuals and entities.  (*See* Am. Compl.)

On December 19, 2016, the Court issued an Order allowing for all briefing regarding Defendants' Motion To Dismiss (the "Motion") to be filed simultaneously with the Court.  (*See* Mot. Scheduling Order (Dkt. No. 40).)  All served Defendants thereafter served Plaintiff with their Motion To Dismiss Plaintiff's Amended Complaint on February 14, 2017, (*see* Am. Notice of Defs.' Mot. To Dismiss ("Defs.' Mot.") 1 (Dkt. No. 49)), and their supporting papers, (*see* Dkt. Nos. 50–51).  Plaintiff served her opposition papers on April 17, 2017, (*see* Dkt. Nos. 53–55), and Defendants served their Reply on May 1, 2017, (*see* Dkt. No. 52).  To date, all named Defendants except for Fitzgerald have been served and join in the Motion.  On April 5, 2017, the

or incorporated in the complaint by reference").  The Court also may take judicial notice of these documents as matters of public record. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

New York Attorney General filed a Suggestion of Death as to Fitzgerald, indicating that

Fitzgerald had passed away on April 1, 2015, several months before this action had commenced.

(*See* Suggestion of Death (Dkt. No. 47).)

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks

omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

In the Amended Complaint, Plaintiff claims that Vallo, Joseph, and Selsky violated her substantive and procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution based on the disciplinary hearings held at Bedford Hills. Plaintiff further alleges that the punishment she received following these hearings was in violation of the Eighth Amendment, as Defendants were deliberately indifferent to her SHU confinement and the conditions therein, which resulted in a serious deprivation of basic human needs. The Court will address each of these causes of action, but first will consider Defendants' general defenses.

1. Collateral Estoppel

Defendants argue that Plaintiff is collaterally estopped from all procedural and substantive due process claims as against Vallo, as well as the procedural and substantive due process claims as against Joseph and Selsky related to the issues of substantial evidence and excessive punishment.  (Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") 14–18 (Dkt. No. 50).)  Plaintiff in fact acknowledges that she has "previously litigated this matter in New York State court."  (Am. Compl. ¶ 22.)

Plaintiff previously presented many of the issues alleged here in her Article 78 proceeding.  Specifically, Plaintiff, through counsel, offered arguments regarding the sufficiency of the evidence, the allegedly disproportionate punishment, and the predetermination of the outcome by Vallo in her Article 78 proceeding.  (*See* Smart Article 78 Brief at 8–24.)  Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank,* 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd,* 446 F.App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater,* 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)).  Federal courts must give the same preclusive effect to state court judgments as would be given by courts of the state itself, *see Hayes v. Cty. of Sullivan,* 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012), which means that New York law governs the preclusive effect of a prior Article 78 judgment on a § 1983 action in federal court, *see Ortiz v. Russo,* No. 13-CV-5317, 2015 WL 1427247, at *6 (S.D.N.Y. Mar. 27, 2015).  Accordingly, collateral estoppel will preclude a court from deciding

an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir. 2007); *see also Hayes,* 853 F. Supp. 2d at 425 (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto,* 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

In the prior Article 78 proceeding, the state court held that "[t]he misbehavior report, photograph of the knife and hearing testimony provide substantial evidence to support the determination of guilt," "[Vallo] could readily determine from the description and photograph of the knife that it [was barred]," and "[Plaintiff's] remaining claims, to the extent that they are preserved for our review, have been examined and found to lack merit." *Smart*, 994 N.Y.S.2d at 736. Defendants argue that this language bars not only Plaintiff's due process claim as to the sufficiency of the evidence upholding the determination, upon which the state court squarely ruled, but also the procedural regularity of the hearing and the propriety of the penalty imposed by Vallo, as well as Joseph at the first hearing, because the state court held that Plaintiff's other claims "ha[d] been examined and found to lack merit." (Defs.' Mem. 15 (quoting *Smart*, 994 N.Y.S.2d at 736).) Plaintiff counters that she has not actually litigated any of her claims as to irregularities related to the search resulting in the discovery of the utensil, which is the conduct that precipitated the hearings, (*see* Pl.'s Mem. in Opp'n to Defs.' Mot To Dismiss ("Pl.'s Opp'n") ¶¶ 13, 19 (Dkt. No. 53)), nor did she litigate the issue of Fitzgerald's influence on the hearing "taint[ing] the entire disciplinary process," (*id.* ¶ 14).

As to Plaintiff's procedural due process claims regarding the sufficiency of the evidence, collateral estoppel clearly bars such claims as to Vallo. In the Amended Complaint, Plaintiff alleges that Defendants' ultimate determination was "arbitrary and capricious, . . . [and] undertaken without sound basis or reason in law." (Am. Compl. ¶¶ 54, 60, 66.) The state court specifically rejected this argument, holding "[t]he misbehavior report, photograph of the knife and hearing testimony provide substantial evidence to support the determination of guilt," and "[Vallo] could readily determine from the description and photograph of the knife that it [was barred]." *Smart*, 994 N.Y.S.2d at 736. Nor was Plaintiff denied a full and fair opportunity to litigate this issue, given that she, by counsel, submitted a petition supported by exhibits, as well as a brief and reply to the opposition papers. *See Ortiz*, 2015 WL 1427247, at *7 (finding an assertion "that [the plaintiff] was not given a full and fair opportunity to litigate the claims in the prior [Article 78] proceeding . . . would be without merit, given that he submitted a petition supported by exhibits, as well as a reply to the respondents' opposition papers"); *Fortunatus v. Clinton Cty.*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) (concluding that "[the plaintiff] cannot gainsay that he had a full and fair opportunity to litigate his claims" where, "[i]n addition to his lengthy petition, [the plaintiff] submitted sworn affidavits, exhibits, and a memorandum of law in support of his claims, all of which would substantiate a full opportunity to litigate"); *Carroll v. Callanan,* No. 05-CV-1427, 2008 WL 170204, at *3 (N.D.N.Y. Jan. 16, 2008) (holding that "[the plaintiff] had a full and fair opportunity to [litigate] by raising the issues . . . in multiple documents submitted during the course of his Article 78 proceeding"). Yet, Plaintiff argues that deficiencies in the evidentiary record in the Article 78 proceeding deprived her of a full and fair opportunity to litigate this issue. Specifically, Plaintiff argues that she did not present the conduct of Gifford or Fitzgerald, which she claims implicate the sufficiency of the evidence

before the state court.  (*See, e.g.*, Pl.'s Opp'n ¶¶ 14–15.)  However, Plaintiff does not allege that this evidence was *unavailable* to her at the time of the proceeding, nor does she claim to have been prevented from presenting this evidence at any point.  Thus, "[t]he fact that [s]he chose not to present this evidence at h[er] Article 78 hearing 'is beside the point.'"  *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at * 6 (S.D.N.Y. Dec. 5, 2011) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003)); *Mancuso v. Vill. of Pelham*, No. 15-CV-7895, 2016 WL 5660273, at *17 (S.D.N.Y. Sept. 29, 2016) (applying collateral estoppel where the plaintiff "fail[ed] to argue that such information is 'new' rather than merely repetitive of the allegations presented in the prior proceedings").  Accordingly, to the extent Plaintiff challenges the ultimate outcome of her disciplinary hearing due to insufficiency of the evidence, that challenge is precluded.

Collateral estoppel also applies as to Plaintiff's claims against Vallo arising out of any alleged procedural irregularities and excessive punishment.  Plaintiff's Article 78 petition specifically argued that "the guilty determination flowed from Lt. Vallo's personal opinion rather than from the evidence before him," (Smart Article 78 Petition ¶ 57), and "the penalty imposed upon [Plaintiff] was excessive and grossly disproportionate to her alleged misconduct, (*see* Smart Article 78 Brief 23–24), and the state court's treatment of those issues was a determination on the merits.  Specifically, the state court held that these arguments, "to the extent that they are preserved for our review, *have been examined and found to lack merit*."  *Smart*, 994 N.Y.S.2d at 736 (emphasis added).  While imposition of collateral estoppel "does not require that the prior judgment contain the precise words 'on the merits' in order to be given res judicata effect," it is required that it "appear[] from the judgment that the dismissal was on the merits."  *Thaler v. Casella*, 960 F. Supp. 691, 698 (S.D.N.Y. 1997) (internal quotation marks omitted).  Here, the

state court judgment explicitly notes that these arguments were "found to lack merit," *Smart*, 994 N.Y.S.2d at 736, and as the Second Circuit has held in the analogous context of habeas relief, there is nothing that "requires the state court to have explained its reasoning process," *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001). *See also Harrington v. Richter*, 562 U.S. 86, 100 (2011) (noting that a state court is not required "to give reasons before its decision can be deemed to have been adjudicated on the merits." (internal quotation marks omitted)); *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (concluding that state court had reviewed the claim on the merits where it found "petitioner's claim to be unpreserved, and, in any event, without merit," and the decision constituted an adjudication on the merits); *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (holding that a claim was adjudicated on the merits where it was one of the "remaining contentions" that the Appellate Division stated were "without merit"); *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (holding that "an issue raised may be considered adjudicated 'on the merits' . . . even when the state court does not specifically mention the claim but uses general language referable to the merits"). Accordingly, because Plaintiff expressly raised the issues of procedural irregularity and excessive punishment in state court, and the state court determined that those claims lacked merit, to the extent Plaintiff again raises those claims, they are precluded.[4]

## 2. Procedural Due Process Claims

In any event, even if Plaintiff's procedural due process claims were not precluded, those claims fail. "[T]o present a due process claim, a plaintiff must establish (1) that [s]he possessed

---

[4] The Court need not reach whether collateral estoppel applies as to the sufficiency of the evidence claim based on the first hearing before Joseph, as Plaintiff's Amended Complaint makes no allegations regarding the evidence used at that hearing, nor does Plaintiff's due process claim challenge the procedures of that hearing on those grounds.

a liberty interest and (2) that the defendant(s) deprived h[er] of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (first alteration in original) (internal quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (internal quotation marks omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (internal quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted).

As a guidepost to determine whether due process protections are required in the prison

context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an

intermediate duration—between 101 and 305 days—development of a detailed record of the

conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364

F.3d at 64–65 (internal quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-

CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same).  Moreover, "although

shorter confinements under normal SHU conditions may not implicate a prisoner's liberty

interest, [the Second Circuit has] explicitly noted that SHU confinements of fewer than 101 days

could constitute atypical and significant hardships if the conditions were more severe than the

normal SHU conditions . . . or a more fully developed record showed that even relatively brief

confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65

(citation omitted).  "The court may resolve the issue of atypicality as a matter of law only when

the conditions are uncontested." *Houston v. Cotter*, 7 F. Supp. 3d 283, 297 (E.D.N.Y. 2014)

(citing *Palmer*, 364 F.3d at 65).  Indeed, the Second Circuit has cautioned that "[i]n the absence

of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where

the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin*

plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU

conditions." *Palmer*, 364 F.3d at 65–66; *see also Houston*, 7 F. Supp. 3d at 298 (same).

Regarding the process an inmate is due, a disciplinary hearing comports with due process

when an inmate receives "advance written notice of the charges; a fair and impartial hearing

officer; a reasonable opportunity to call witnesses and present documentary evidence; and a

written statement of the disposition, including supporting facts and reasons for the action taken."

*Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).  "In the context of prison disciplinary hearings,

the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman*, 2011 WL 6028212, at *7 (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

### a. November 27, 2012 Disposition

With respect to the initial hearing before Joseph, to the extent that Plaintiff alleges that Fitzgerald had undue influence upon the outcome of the hearing, (*see* Am. Compl. ¶¶ 29–31), such allegations are insufficient to rise to the level of a due process violation. Although it is "improper for prison officials to decide the disposition of a case before it [i]s heard," the Second Circuit has determined that "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally," and given the "special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (citation omitted). Plaintiff alleges no facts that Joseph was at all involved in the incident, and fails to present any facts in support of her threadbare allegation that the outcome of the hearing was predetermined by Fitzgerald. (*See* Am. Compl. ¶ 30.) Plaintiff's suggestion that Fitzgerald, a Deputy Superintendent, somehow predetermined for Joseph, also a Deputy Superintendent, the outcome of the hearing due to his "position[] of authority" is wholly conclusory and unsupported by any factual allegations. (*Id.*) Fitzgerald was not the hearing officer, and Plaintiff does not allege that Fitzgerald was at the hearing or had any role in its outcome. As such, Plaintiff's claims regarding Fitzgerald's conduct, absent any specific allegations about how Joseph predetermined the outcome of the hearing, are insufficient to render the proceedings unconstitutionally biased,

and therefore do not amount to a plausible procedural due process claim. *See Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *10 (S.D.N.Y. Aug. 28, 2017) (holding that the plaintiff's "fail[ure] to present any facts in support of his threadbare allegation that [the defendant] had 'predetermined the outcome'" of the hearing was insufficient to "render the proceedings unconstitutionally impartial and d[id] not present a plausible procedural due process claim").

Plaintiff also claims that Joseph and Kaplan failed to provide her with a written statement of the November 27, 2012 disposition until January 2013. (*See id.* ¶ 32.) Due to this delay, Plaintiff was "unable to appeal the disciplinary ruling in a timely fashion." (*Id.* ¶ 33.) The Supreme Court has established the right to receive a written copy of the disposition, including the evidence and supporting facts considered in reaching the outcome. *Wolff,* 418 U.S. at 563–65 (holding that there "there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action" (internal quotation marks omitted)), and the Second Circuit has reaffirmed this requirement, *see Luna,* 356 F.3d at 487 ("Inmates are entitled to . . . a written statement of the disposition, including supporting facts and reasons for the action taken."); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (same). If Plaintiff was indeed deprived of a written copy of the November 27, 2012 disposition, such a deprivation would generally constitute a violation of Plaintiff's procedural due process rights. *See generally Walker v. Bates,* 23 F.3d 652, 658–59 (2d Cir. 1994) ("[O]nce prison officials deprive an inmate of his constitutional procedural rights at a disciplinary hearing and the prisoner commences to serve a punitive sentence imposed at the conclusion of the hearing, the prison official responsible for the due process deprivation must respond in damages . . . .").

Defendants first contend that no such deprivation occurred. According to Defendants, Plaintiff in fact signed for the written disposition on November 27, 2012—the final date of the hearing—and subsequently appealed the initial hearing eight days later on December 5, 2012. (*See* Defs.' Mem. 21–22 (citing Schulman Decl. Ex. H ("Initial Hearing Disposition and Appeal") at 2–4).) However, the Court declines to consider these documents for the purposes of this Motion.

On a Rule 12(b)(6) motion, extrinsic evidence may be considered only if it is "deemed part of the pleadings." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010). The complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). To be incorporated by reference, however, "the complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca*, 695 F. Supp. 2d at 60 (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)). "Limited quotation does not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). "[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* To be integral to a complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123

(S.D.N.Y. 2010) (alteration and internal quotation marks omitted). A document "is not integral simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016) (internal quotation marks omitted). Even where a document is integral to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

It is true that Plaintiff's procedural due process claim regarding the November 27, 2012 disposition is rooted in a factual dispute as to whether she received a written copy of the disposition within 24 hours from Joseph. (*See* Am. Compl. ¶¶ 32–33.) However, Defendants have not shown that Plaintiff both had notice of the documents and relied on them in drafting the Amended Complaint, nor have they shown that there is no dispute as to their authenticity. While Plaintiff may have had notice of the existence of her signature of receipt of the written disposition and her subsequent appeal, there is no basis for the Court to find that she relied specifically on those documents in drafting the Amended Complaint. Moreover, although Plaintiff mentions the filing of her appeal and failure to receive her written disposition in the Amended Complaint, (*see id.* ¶¶ 32–33), "[s]uch limited references are insufficient to incorporate documents or exhibits into the complaint," *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008). Accordingly, the Court declines to consider these documents in resolving this Motion.

Therefore, the Court will accept as true for the purpose of this Motion Plaintiff's claim that she did not receive a written copy of the disposition. The Second Circuit has held generally that when a procedural due process violation has occurred in connection with a disciplinary

hearing, "reversal on administrative appeal does not preclude a damage action for a due process violation at a prisoner's disciplinary hearing where the reversal occurs *after* the prisoner has served at least a portion of the restrictive confinement." *Mays v. Mahoney*, 23 F.3d 660, 662 (2d Cir. 1994) (emphasis added); *see also Walker,* 23 F.3d at 658–59 (same). However, courts in the Second Circuit have recognized that such an action is precluded where a prisoner is reheard prior to serving any time solely attributable to the defective proceeding. *See Barnes v. Henderson*, 628 F. Supp. 2d 407, 412 (W.D.N.Y. 2009) (determining that any "procedural defects were cured through the administrative appeal process before [the] plaintiff began serving any punitive sentence as a result of such defects"); *Pacheco v. Vanwyk*, No. 94-CV-456, 1997 WL 642540, at *2 (N.D.N.Y. Oct. 15, 1997), *aff'd*, 164 F.3d 618 (2d Cir. 1998) (holding that because the plaintiff "did not serve any punishment for . . . the charge that was administratively reversed . . . no constitutional harm relating to the . . . charge occurred as a matter of law."); *Breazil v. Bartlett*, 998 F. Supp. 236, 244 (W.D.N.Y. 1997) (holding that "the rule of *Walker* and *Mays* does not apply," where "administrative reversal . . . and rehearing of a disciplinary charge, result[ed] in a significant reduction of the length of punitive confinement and at least partial credit for time served . . . [and] cured the procedural defects that allegedly occurred at the first hearing"); *Valentine v. Honsinger,* 894 F. Supp. 154, 158 (S.D.N.Y. 1995) (finding "no claim because [the] plaintiff suffered no deprivation . . . as a result of [the defendant's] conduct because the sentenced issued by [the defendant] . . . was limited to punishment [the] plaintiff had already served." (alterations omitted)); *Jenkins v. Semintini,* No. 93-CV-2045, 1994 WL 150824, at *2 (S.D.N.Y. April 19, 1994) (dismissing claim against hearing officer where, "because the result of the disciplinary hearing . . . was time already served . . . [the] [p]laintiff suffered no confinement as *a result* of the absence of witnesses at his disciplinary hearing").

At Plaintiff's initial hearing on November 27, 2012, she was found guilty of both the contraband and weapons charges levied against her. (*See* Am. Compl. ¶ 29.) Plaintiff was thereafter sentenced to 180 days in SHU for both charges. (*See id.*) That sentence was ultimately vacated and remanded by Selsky, (*see id.* ¶ 34), which led to the January 15, 2013 hearing before Vallo where Plaintiff was found guilty of only the weapons charge, and not guilty of the contraband charge. (*See id.*) Upon the conclusion of the rehearing proceedings on January 22, 2013, Vallo found Plaintiff guilty of one charge—possession of a weapon—for which he levied a 90 day sentence. (*See id.* Ex. A at unnumbered 2.) Plaintiff was thereafter sentenced to 90 days in SHU, inclusive of time previously served. (*See id.*) Moreover, Vallo's written disposition expressly included the 67 days Plaintiff had served prior to this disposition as being served as part of her sentence for the upheld weapons charge.[5] (*See id.*) Given this outcome, the ultimate reversal of the allegedly defective proceedings is understood to have occurred *before* Plaintiff served any portion of the disciplinary sentence related to that defective proceeding. That is, Plaintiff did not ultimately serve any time that was credited to the initial verdict or for the vacated contraband charge, as the entirety of Plaintiff's confinement between November 15, 2012 and January 22, 2013 was found to be applied to the January 22, 2013 weapons conviction as time already served. *See Jenkins*, 1994 WL 150824, at *2 (dismissing claim against hearing officer where, "because the result of the disciplinary hearing . . . was time already served"). Accordingly, Plaintiff's claims related to the allegedly defective November 27, 2012 proceeding are dismissed as to all Defendants.

---

[5] Specifically, Vallo determined that the start date of Plaintiff's sentence for the weapons charge was November 15, 2012, and was to end 90 days later on February 15, 2013, meaning that Plaintiff's 67 days in SHU prior to January 22, 2013 were applied to the weapons charge from the second hearing and the punishment was unrelated to the allegedly defective proceeding. (*See* Am. Compl. Ex. A at unnumbered 2.)

<u>b.  January 22, 2013 Disposition</u>

To make out a due process claim against Vallo, who conducted the second hearing after the remand order, Plaintiff must show: (1) that his 90-day confinement without privileges in the SHU constituted a deprivation of a protected liberty interest; and (2) that such deprivation was the result of the procedural defects.  *See Ortiz*, 380 F.3d at 654.  The first element of Plaintiff's due process claim is met here.  Plaintiff was confined to SHU for 90 days, a period that approaches the 101–day threshold for more detailed factual development set forth by the Second Circuit.  *See Palmer*, 364 F.3d at 65–66.  Further, Plaintiff alleges she endured conditions that are qualitatively different than those experienced by other prisoners in SHU, as well as those in general confinement.  Specifically, Plaintiff alleges that she was "not . . . able to sleep or tell time as the cell and corridor lights in her area would never shut off," (Am. Compl. ¶ 39), and while she was offered outdoor activity, that was in practice unavailable given that the ground was "filled with snow and ice without being cleaned," (*id.* ¶ 38).  At this stage, absent a more detailed factual record, such conditions could plausibly be considered "more onerous than usual."  *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009).  Given that less daunting SHU conditions for periods shorter than 101 days have been deemed sufficient to survive dismissal, the Court concludes that Plaintiff has pleaded facts sufficient to implicate a constitutionally protected liberty interest.  *See, e.g.*, *Palmer,* 364 F.3d at 66 (seventy-seven days in SHU confinement with no access to personal items and denial of privileges deemed sufficient); *Welch v. Bartlett,* 196 F.3d 389, 393–94 (2d Cir. 1999) (ninety days in SHU confinement with generally substandard hygienic conditions created an issue of fact as to liberty interest).

However, Plaintiff fails to make any allegations challenging the sufficiency of the process provided during the second hearing before Vallo.  For example, Plaintiff's Amended

Complaint is devoid of any mention of whether she received "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; [or] a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna*, 356 F.3d at 487. Rather, Plaintiff recounts the arguments she made at the disciplinary hearing, alleging that the utensil was "received . . . many years ago," kept "in open view for all of those years," and "did not have a serrated edge and could not be used to cut." (Am. Compl. ¶¶ 36–37.) Moreover, Plaintiff claims that the item itself was not entered into evidence; instead, Vallo relied upon "a black and white photograph that effectively altered the item's appearance to look menacing and violent." (*Id.* ¶ 37.) Yet, these allegations go only to the sufficiency of the evidence to support Vallo's findings at the hearing, not the process due to Plaintiff. *See Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment.").[6]

---

[6] Even if Plaintiff could challenge the sufficiency of the evidence at the hearing, due process in this context requires only that the hearing officer's decision be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied 'if there is *any* evidence in the record that supports' the disciplinary ruling." *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000)). Here, Vallo's decision undoubtedly meets the "some evidence" threshold. Plaintiff concedes that the utensil was hers, (*see* Am. Compl. ¶ 36), that Vallo reviewed a photograph of the utensil, (*see id.* ¶ 37), as well as Plaintiff's file, (*see id.* Ex. A. at unnumbered 2), and determined that Plaintiff possessed a "14 [inch] plastic cake knife," (*see id.*), which she conceded in state court was not allowed at Bedford Hills under existing DOCCS policies, (*see* Schulman Decl. Ex. E ("Smart Article 78 Reply") at 2–3. If nothing else, the state court's holding fatally undercuts any sufficiency claim Plaintiff could make here. *See Smart*, 994 N.Y.S.2d at 736

To the extent that Plaintiff alleges that Vallo's impartiality was impacted by Fitzgerald's statement to Plaintiff that "he will not even think about releasing Plaintiff from the Special Housing Unit," and that Fitzgerald predetermined Plaintiff's case, (Am. Compl. ¶¶ 29–30), such allegations are wholly conclusory. As noted above, reliance by Plaintiff upon an "unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertions devoid of further factual enhancement," do not suffice to state a claim. *Iqbal*, 556 U.S. at 678 (alteration and internal quotation marks omitted). Plaintiff makes no claim that Vallo himself "prejudge[d] the evidence," *Rahman*, 2011 WL 6028212, at *7 (internal quotation marks omitted), or that Fitzgerald had any role in the hearing itself.[7] Accordingly, Plaintiff has failed to state a claim that she was deprived of an impartial hearing officer. *See, e.g.*, *Thomas*, 2017 WL 3726759, at *10 (holding the plaintiff's allegations "that the hearing was not impartial due to 'staff direct involvement in this incident,' and that [a] [d]efendant . . . had 'predetermined the outcome' of th[e] matter," did not rise to the level of being "unconstitutionally impartial and d[id] not present a plausible procedural due process claim"); *Edwards v. Horn,* No. 10-CV-6194, 2012 WL 760172, at *10 n. 11 (S.D.N.Y. Mar. 8, 2012) (rejecting Plaintiff's claim of bias because Plaintiff failed "to plead any specific facts, beyond his conclusory allegation of bias, to suggest that [the hearing officer] was predisposed to finding him guilty").[8]

---

[7] In fact, Plaintiff's allegations about Fitzgerald's role seem more directed to the first hearing conducted by Joseph on November 21, 2012, and even there, as discussed above, these allegations do not suggest that Fitzgerald influenced Josephs's decision.

[8] To the extent Plaintiff claims that Gifford's initial search and allegedly false Report constitute a due process violation, that claim fails. *Benitez v. Ham*, No. 04-CV-1159, 2009 WL 3486379, at *21 (N.D.N.Y. Oct. 21, 2009) ("[A] correctional officer's filing of unfounded charges does not give rise to procedural due process liability." (citing *Freeman v. Rideout*, 808 F.2d 949, 953–54 (2d Cir. 1986)); *see also Thomas*, 2017 WL 3726759, at *10 (same).

### 3. Substantive Due Process

Plaintiff's Amended Complaint never actually mentions substantive due process, and in fact, the Court struggles to determine from the pleadings exactly what constitutional right Plaintiff claims is at stake. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) ("The first step in substantive due process analysis is to identify the constitutional right at stake."). To the extent Plaintiff alleges that her substantive due process rights were violated in claiming that Defendants engaged in "deliberate and outrageous deprivations of Plaintiff's federally protected rights," (Am. Compl. ¶ 58), as well as conduct that was "arbitrary and capricious," (*id.* ¶ 60), and ultimately imposed a punishment that was "shocking to any sense of fairness," (*id.* ¶ 61), that claim fails.

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance*, 20 F.3d at 537 (internal quotation marks and citations omitted); *see also Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (same). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks omitted). In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (same). "*Graham* simply requires

that if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Accordingly, if Plaintiff's allegation is that the action was arbitrary and capricious, due to procedural defects in the hearings, (*see, e.g.*, Pl.'s Opp'n ¶ 56), such claims have been rejected above, as they are "covered by the Due Process Clause of the Fourteenth Amendment." *Aikens v. Royce*, No. 14-CV-663, 2015 WL 7758892, at *12 (S.D.N.Y. Dec. 1, 2015). Otherwise, Plaintiff has not alleged facts that suggest Defendants' actions in this case were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." *Okin*, 577 F.3d at 431 (internal quotation marks omitted). Accordingly, Plaintiff's substantive due process claim, to the extent one has been pled, is dismissed.

### 4. Eighth Amendment Claim

Plaintiff also alleges that Defendants were "deliberate[ly] indifferent" to her SHU confinement and the conditions therein, which resulted in a "serious deprivations of basic human needs." (Am. Compl. ¶ 63.) In particular, Plaintiff alleges she was confined in her cell for 23 hours each day, with one hour allotted for physical activity limited to a caged area where, during winter, "the ground filed with snow and ice without being cleaned." (*Id.* ¶ 38.) Moreover, Plaintiff alleges she was unable to sleep or tell time, as the lights in her area of SHU, "would never shut off," (*id.* ¶ 39), was placed in a position in SHU where human contact was "almost entirely non-existent," (*id.* ¶ 40), and was allowed only three showers per week, regardless of her "hygienic state or menstrual cycle," (*id.*).

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). "In such cases, a prisoner

may prevail only where [s]he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Id.* (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the "objective" requirement, a plaintiff must show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [an inmate's] health," which can be satisfied if an inmate is deprived of "basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted). "[T]o establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of h[er] confinement violate contemporary standards of decency." *Phelps*, 308 F.3d at 185.

Under the "subjective" requirement, a defendant "'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 185–86 (quoting *Farmer*, 511 U.S. at 837). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *see also Abdur-Raheem*, 2015 WL 667528, at *4 (same); *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *17 (E.D.N.Y. Aug. 20, 2014) (same).

To the extent Plaintiff claims that the penalty of 90 days in SHU imposed was itself "sufficiently serious," that is alone insufficient to state an Eighth Amendment claim. As other courts have recognized, "[g]enerally, administrative segregation conditions, even though 'restrictive and harsh, are insufficient to establish Eighth Amendment violations because they are part of the penalty that criminal offenders pay for their offenses against society.'" *Tavares v. Amato*, 954 F. Supp. 2d 79, 92 (N.D.N.Y. 2013) (alterations omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Bowens v. Smith*, No. 11-CV-784, 2013 WL 103575, at *10 (N.D.N.Y. Jan. 8, 2013) ("Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has not been held to constitute cruel and unusual punishment."), *adopted by* 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013).

However, Plaintiff's allegation of purposeful sleep deprivation and constant illumination in SHU, (*see* Am. Compl. ¶ 39), could, as alleged, be a sufficiently serious conditions that jeopardized her health, *see Walker*, 717 F.3d at 126 ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."); *Holmes v. Grant*, No. 03-CV-3426, 2006 WL 851753, at *3, 11–12 (S.D.N.Y. Mar. 31, 2006) (denying motion to dismiss plaintiff's claim that 24–hour illumination of the SHU for 35 days caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems because, as alleged, it would sustain both the objective and the subjective prongs of an Eighth Amendment analysis).

Yet, nothing in Plaintiff's Amended Complaint suggests that any Defendant was directly or indirectly involved in causing any physical injury or pain to Plaintiff. The Second Circuit has

made clear that, "[p]roof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." *Gaston*, 249 F.3d at 164. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff makes no allegations in her Amended Complaint that any Defendant knew of the alleged conditions, let alone participated in their creation. Instead, she argues for the first time in her opposition that Bedford Hills as a whole was "responsible" and that all Bedford Hills officers "certainly knew" of these conditions. (Pl.'s Opp'n ¶ 36.) However, unlike a pro se plaintiff, the Court need not consider counsel's representations in opposition papers. *Compare United States v. Barnes,* 158 F.3d 662, 672 (2d Cir. 1998) ("Normally, we will not consider arguments raised for the first time in a reply brief") *with Rosario v. City of New York*, No. 12-CV-4795, 2013 WL 2099254, at *1–2 n.1 (S.D.N.Y. May 15, 2013) ("[B]ecause [the plaintiff] is proceeding pro se, the [c]ourt also considers factual allegations contained in [his] two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the Complaint.").

Even if the Court were to assume the general supervisory status of Selsky and Kaplan, they cannot be held personally liable for constitutional violations merely "because [t]he[y] [are] in a high position of authority" at Bedford Hills. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff does not plausibly allege that either of these individuals failed to "act on information regarding the [allegedly] unlawful conduct" or otherwise acted with "gross negligence." *Reid*, 2014 WL 4185195, at *12 (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003)). In fact, there is no allegation that Plaintiff complained to, filed a grievance with, or even mentioned this condition to any Defendant, and there are no facts in the Amended Complaint suggesting Defendants were aware of the allegedly unconstitutional conditions in SHU, or that Plaintiff specifically was at risk. *See Wright*, 21 F.3d at 501 (finding no personal involvement when the defendant "was never put on actual or constructive notice of the [rule] violation," did not "create a policy or custom under which the violation occurred," and did not "act[ ] negligently in managing subordinates who caused the violation").

Therefore, because the Amended Complaint fails to allege that any Defendant was "aware of facts from which the inference could be drawn that" the specific SHU conditions specifically posed a substantial risk of serious harm to Plaintiff, or that Defendants in fact drew such an inference, *Farmer*, 511 U S. at 837, the Court dismisses Plaintiff's Eighth Amendment claims.

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion To Dismiss the Amended Complaint in its entirety. As Plaintiff is represented by counsel and has already amended her Complaint once, these claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-

around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at \*24 n.19

(S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has

already had two bites at the apple, and they have proven fruitless" (alterations and internal

quotation marks omitted)). The Clerk of Court is respectfully directed to terminate the pending

Motion, (Dkt. No. 49), and close this case.

SO ORDERED.

DATED:    January *12*, 2018
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

31